J-S58013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID LEE GROVER, JR., | |
| Appellant | No. 622 MDA 2015 |

Appeal from the PCRA Order January 21, 2015
in the Court of Common Pleas of Huntingdon County
Criminal Division at No.: CP-31-CR-0000054-2010

BEFORE: GANTMAN, P.J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:              **FILED NOVEMBER 24, 2015**

Appellant, David Lee Grover, Jr., appeals *nunc pro tunc* from the order denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

Because Appellant's claims allege trial and appellate counsel ineffectiveness, we will provide a brief recitation of the pertinent facts, which we take from this Court's April 9, 2012 memorandum opinion.

> [B]etween August[] 2009[] and December[] 2009, Appellant and B.P. were engaged in a sexual relationship. Appellant was [39 years old and] [B.P.] was [15 years old when the relationship began].

* * *

_____

[*] Retired Senior Judge assigned to the Superior Court.

[B.P.] testified that sexual things started to happen between her and Appellant in August[] 2009. [B.P.] was clear she wanted them to happen as she loved Appellant. . . . [B.P.] testified that she and Appellant had sexual intercourse five (5) times before her sixteenth (16th) birthday[, but] was very unclear with respect to dates, days, and times. . . .

Trooper Charles Aungst, a sixteen (16) year state police veteran, testified he opened an investigation in early January[] 2010. After interviewing [B.P.] and her mother on January 9, 2010, he unsuccessfully called Appellant. Later that same day, [Appellant] returned the call and arrangements were made to meet the following day at the state police barracks.

The next day Appellant appeared at the barracks. [Appellant] was told what the allegations were that prompted the interview. He was also told he was free to leave. Trooper Aungst testified that he read to [Appellant] a form headed "Pennsylvania Noncustodial Written Statement", and that [Appellant] placed appropriate checkmarks on the form and initialed his answers. Thereafter, [Trooper Aungst] asked Appellant a series of forty-eight (48) questions. He kept notes as to each question as well as [Appellant's] answers. After the questioning was completed, Trooper Aungst allowed Appellant to leave.

(**Commonwealth v. Grover**, No. 998 MDA 2011, unpublished memorandum at *1-*3 (Pa. Super. filed Apr. 9, 2012)) (citing Trial Court Opinion, 7/18/11, at 2-5).

On January 12, 2011, a jury convicted Appellant of involuntary deviate sexual intercourse, statutory sexual assault, aggravated indecent assault, corruption of minors, and indecent assault.[1] On May 19, 2011, the court sentenced Appellant to an aggregate term of incarceration of not less than

---

[1] 18 Pa.C.S.A. §§ 3123(a)(7), 3122.1, 3125(a)(8), 6301(a)(1), and 3126(a)(8), respectively.

ten nor more than twenty years. Appellant filed a timely appeal, and this Court affirmed his judgment of sentence on April 9, 2012. (*See id.* at *18). Appellant did not file a petition for allowance of appeal with our Supreme Court.

On October 22, 2012, Appellant filed a *pro se* first PCRA petition. Appointed PCRA counsel filed an amended petition on December 19, 2012. The court held a hearing on October 3, 2014. After the parties filed proposed findings of fact, the PCRA court denied the petition on January 21, 2015. On March 2, 2015, Appellant filed a motion to file an appeal *nunc pro tunc*, which the court granted. Appellant timely appealed.[2]

Appellant purports to raise one vague issue for our review: "Whether the PCRA court erred in dismissing the PCRA [p]etition filed by [Appellant]?" (Appellant's Brief, at 7). However, in fact, he raises five separate claims of ineffectiveness of counsel. Specifically, he maintains that counsel failed to: (1) call proposed witnesses; (2) introduce certain evidence; (3) advise the trial court of juror misconduct; (4) object to the trial court's answer to a jury question; and (5) file for an allowance of appeal with the Pennsylvania Supreme Court. (*See id.* at 12-17). We will treat each of these allegations as a separate issue.

_____

[2] Appellant filed a timely Rule 1925(b) statement on April 30, 2015 pursuant to the PCRA court's order. *See* Pa.R.A.P. 1925(b). The PCRA court filed a Rule 1925(a) opinion on May 19, 2015. *See* Pa.R.A.P. 1925(a).

Preliminarily, we observe that, other than initial citations to boilerplate law, (*see id.* at 11-12), in the argument section, Appellant provides no pertinent legal citation in support of each of his individual arguments, particularly as they apply to the *Pierce* prongs. (*See id.* at 15-18); *see also* Pa.R.A.P. 2119(a), (b); *Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987). Instead, the argument section of his brief contains recitations of the facts in the light most favorable to him, and conclusory statements without any well-developed discussion, in violation of Pennsylvania Rule of Appellate Procedure 2119(a) and (b). *See* Pa.R.A.P. 2119(a), (b). Therefore, Appellant's claims are waived. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) ("We shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived.").

Moreover, Appellant's issues would not merit relief. Our standard of review of appeals from PCRA court decisions is well-settled:

> This Court analyzes PCRA appeals "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012[, *appeal denied*, 64 A.3d 631 (Pa. 2013)]. Our "review is limited to the findings of the PCRA court and the evidence of record" and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Id.* Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id.* (citations omitted).

"[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. . . ." ***Id.***

***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014). Further, "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court." ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

As stated previously, Appellant asserts five claims of counsel's ineffectiveness. (***See*** Appellant's Brief, at 12-17).

> [T]o succeed on an ineffectiveness claim, a petitioner must demonstrate that: the underlying claim is of arguable merit; counsel had no reasonable basis for the act or omission in question; and he suffered prejudice as a result, *i.e.*, there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding.

***Commonwealth v. Laird***, 119 A.3d 972, 978 (Pa. 2015) (citations omitted); ***see also Pierce***, ***supra*** at 976. "Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test." ***Commonwealth v. Rolan***, 964 A.2d 398, 406 (Pa. Super. 2008) (citation and emphasis omitted).

Here, Appellant's first allegation of trial counsel ineffectiveness maintains that counsel "fail[ed] to call the witnesses [Appellant] gave to him in their pretrial meetings." (Appellant's Brief, at 12). Specifically, Appellant maintains that trial counsel erred in failing to call B.P.'s grandmother, S.H.,

her Juniata Valley band camp director, her friend, C.B., and C.B.'s mother, D.B., as witnesses at trial. (**See id.** at 12-14). Appellant's claim would not merit relief.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner [must establish] that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. To demonstrate . . . prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy.

**Commonwealth v. Sneed**, 45 A.3d 1096, 1108-09 (Pa. 2012) (citations and quotation marks omitted).

We first review Appellant's argument as to S.H. and the band camp director. Appellant claims that B.P. was out of state with S.H., and at the Juniata Valley band camp, during part of August 2009, and that the grandmother and the band camp director would have testified to that fact. (**See** Appellant's Brief, at 13-14).

However, Appellant does not argue that these individuals were available and willing to testify for the defense, or that the absence of this testimony "was so prejudicial as to have denied [him] a fair trial." **Sneed**, **supra** at 1109. In fact, the PCRA court observed that S.H. did not testify at

the PCRA hearing and "even if [she] testified [at trial] as advertised, the relevance of the testimony would have been minimal given that B.P. did not testify as to the dates and times of her sexual encounters with [Appellant]." (PCRA Court Opinion, 5/19/15, at 5). Further, trial counsel testified at the PCRA hearing that Appellant never identified S.H. as a potential witness. (*See* N.T. PCRA Hearing, 10/03/14, at 5).

Additionally, counsel stated that he did not call the band camp director as a witness because B.P. had not testified about specific dates of the sexual activity, and therefore it would not have been worth it. (*See id.* at 6). In addition, he testified that, although he did not call the camp director, he cross-examined B.P. at trial about the band camp issue. (*See id.*; *see also* N.T. Trial, 1/12/11, at 58-59).

Therefore, based on the foregoing, Appellant's claim of trial counsel ineffectiveness for not calling S.H. and the band director as witnesses would lack merit, even if not waived, where he failed to prove that the witnesses were available and willing to testify, that counsel knew of their existence, and that "the absence of the testimony . . . was so prejudicial as to have denied [Appellant] a fair trial." *Sneed*, *supra* at 1109; *see also Laird*, *supra* at 978; *Rolan*, *supra* at 406.

We next address Appellant's claim as it relates to C.B. and D.B. (*See* Appellant's Brief, at 13-14).

At the PCRA hearing, Appellant testified that he told counsel about B.P.'s friend, C.B., and that she could testify that she spent several overnights at his house, and he never made any sexual advances toward her. (*See* N.T. PCRA Hearing, at 32). Appellant stated that he told counsel that he wanted D.B. to testify because "she obviously . . . felt comfortable enough for her daughter to spend time at [his] house. She had no worries either of something like that happening." (*Id.* at 32-33). However, counsel testified that Appellant did not mention either C.B. or D.B. to him as potential witnesses, and the individuals did not appear at the PCRA hearing. (*See id.* at 3, 7).

After our independent review of the record, we conclude that Appellant failed to establish that counsel knew of, or should have known, about C.B. and D.B., that they were available and willing to testify on his behalf, or that "the absence of [their] testimony . . . was so prejudicial as to have denied [him] a fair trial." *Sneed*, *supra* at 1109.

Therefore, in sum, Appellant failed to meet his burden of proving trial counsel's ineffectiveness for not calling S.H., the band camp director, C.B. and D.B. as witnesses. *See Sneed*, *supra* at 1108-09; *see also Laird*, *supra* at 978; *Rolan*, *supra* at 406. Accordingly, Appellant's first issue would not merit relief.

In his second claim, Appellant maintains that trial counsel was ineffective for failing to present evidence of B.P.'s alleged sexually

transmitted disease (STD), which he and his wife do not have. (**See** Appellant's Brief, at 14). He argues that "[t]his evidence would have established that [he] could not have performed the alleged acts in question[]" and "was relevant . . . to attack the credibility of the alleged victim." (**Id.**) (citing **Commonwealth v. Fink**, 791 A.2d 1235, 1241 (Pa. Super. 2002).[3] Appellant's claim would not merit relief.

At the PCRA hearing, counsel testified that he had no recollection of a conversation with Appellant about B.P.'s alleged STD.[4] (**See** N.T. PCRA Hearing, at 8). Therefore, because counsel had a reasonable basis for not presenting the evidence where he was not aware of it, and Appellant fails to prove that, but for the omission of this alleged evidence, the outcome of the trial would have been different, **see Laird**, **supra** at 978, we conclude that the record supports the PCRA court's finding that Appellant failed to prove

---

[3] Although we already observed that Appellant waived all of his issues, we note that his paltry six sentence long "argument" does cite to **Fink** in support of his allegation that "[t]he evidence was relevant . . . to attack the credibility of [B.P.]." (Appellant's Brief, at 14). However, he does not provide any pertinent discussion or caselaw regarding **Fink**'s applicability to this case, or about his specific allegation regarding the admissibility of evidence of a victim's alleged STD. (**See id.**); **see also** Pa.R.A.P. 2119(a), (b).

[4] Counsel further maintained that, even if he knew about the evidence, and it was true, it probably would have been inadmissible under the Rape Shield Law, 18 Pa.C.S.A. § 3104. (**See** N.T. PCRA Hearing, at 8). However, because of our disposition, we need not discuss the accuracy of this statement.

counsel's ineffectiveness for not introducing evidence of B.P.'s alleged STD. *See Laird*, *supra* at 978; *Rolan*, *supra* at 406. Appellant's second issue would lack merit.

In his third claim, Appellant maintains that "[t]rial counsel was ineffective for failing to advise the trial court that one of the jurors [had] been overheard on the telephone saying his mind was made up that [Appellant] was guilty and they would be home soon . . . ." (Appellant's Brief, at 14). Appellant's issue, in addition to being waived for failing to provide pertinent citation and discussion, would not merit relief.

At the PCRA hearing, counsel unequivocally stated that neither Appellant nor his wife alerted him to alleged juror misconduct. (*See* N.T. PCRA Hearing, at 9). Counsel expressly testified that, had he been told of anything of that nature, he immediately would have informed the trial court. (*See id.*).

The PCRA court found counsel's testimony credible in part based on its own prior experience with him. (*See* PCRA Ct. Op., at 8-9). We cannot overrule this credibility finding. *See Spotz*, *supra* at 259. Accordingly, because he failed to plead and prove that counsel even knew about the alleged juror misconduct, Appellant's third issue, even if not waived, would not merit relief. *See Laird*, *supra* at 978; *Rolan*, *supra* at 406.

In his fourth claim, Appellant maintains that trial counsel was ineffective for failing to object to the trial court's response to a jury question

during deliberations about the import of his signature on the non-custodial rights waiver form. (*See* Appellant's Brief, at 15-16). This allegation would not merit relief.

In Appellant's direct appeal, this Court addressed the issue of whether "the trial court erred when it refused to charge the jury that Appellant's signature on the noncustodial rights waiver form was not a verification of the answers Appellant gave to Trooper Aungst on January 10, 2010." (*Grover*, *supra* at *15). Although this Court found waiver for counsel's failure to object, it addressed the merits of the claim and it concluded that Appellant was not entitled to relief. (*See id.* at *17-*18).

Therefore, Appellant's claim that trial counsel was ineffective for failing to object to the trial court's answer to the jury question would fail where the underlying claim has been previously litigated, and found to lack merit. *See Laird*, *supra* at 978; *Rolan*, *supra* at 406. Hence, Appellant's fourth claim would not merit relief.

In his fifth issue, Appellant argues that counsel was ineffective for failing to file a petition for allowance of appeal with the Pennsylvania Supreme Court. (*See* Appellant's Brief, at 16). This allegation would not merit relief.

It is well-settled that "the unjustified failure to file a requested direct appeal is ineffective assistance of counsel *per se* and that an appellant need not show that he likely would have succeeded on appeal in order to meet the

prejudice prong of the test for ineffectiveness." ***Commonwealth v. Bath***, 907 A.2d 619, 622 (Pa. Super. 2006), *appeal denied*, 918 A.2d 741 (Pa. 2009) (citation omitted).

However,

> . . . [b]efore a court will find ineffectiveness of counsel for failing to file a direct appeal, the defendant must prove that he requested an appeal and that counsel disregarded that request. Clearly, if a request to file a direct appeal is necessary to sustain an ineffectiveness claim based upon the failure to file a direct appeal, then such a request is also necessary where the alleged ineffectiveness is the failure to file a petition for allowance of appeal.

***Id.*** (citations and quotation marks omitted).

In this case, the PCRA court found that "it is far from clear that [Appellant] established a basis for relief." (PCRA Ct. Op., at 13). More specifically, the court stated "[w]hat [was not] established by a preponderance of the evidence was that [Appellant's] desire that a [petition for allowance of appeal] be filed was communicated to [counsel]." (***Id.***). The record supports the trial court's finding.

At the PCRA hearing, counsel testified that he immediately notified Appellant when this Court denied his direct appeal. (***See*** N.T. PCRA Hearing, at 14). Counsel told Appellant that he had the right to file a petition for allowance of appeal with the Pennsylvania Supreme Court, either with him or other retained counsel, but that he required a $2,000.00 retainer before he could move forward. (***See id.***). He spoke to Appellant's wife one time, and told her to contact him about the deposit and filing a

petition if Appellant wanted to go ahead with an appeal. (*See id.*). When asked what he would do if he "received notice from [Appellant] that he wanted to petition for allowance of appeal but he did not have the appropriate funds," counsel responded that he would have been required to file the petition. (*Id.* at 22). However, he did not do so because, not only did he not receive the $2,000.00 payment, neither Appellant nor his wife called his office and told him to file the petition. (*See id.* at 14-15).

Based on the foregoing, we conclude that Appellant has failed to meet his burden of proving, by a preponderance of the evidence, that his underlying claim, that he told counsel to file a petition for allowance of appeal and counsel failed to do so, has merit. *See Bath*, *supra* at 622; *see also Laird*, *supra* at 978; *Rolan*, *supra* at 406. Appellant's fifth issue would not merit relief.

Therefore, based on our review of Appellant's issues, we conclude that the PCRA court did not err or abuse its discretion in denying his PCRA petition, and that Appellant would not be entitled to appellate relief, even if he had not waived his claims. *See Rigg*, *supra* at 1084.

Order affirmed.

President Judge Gantman joins the Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/24/2015</u>